**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 12-CV-00578-VEB

RAYMOND E. MORRISON,

              Plaintiff,

DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

## I. INTRODUCTION

In January of 2005, Plaintiff Raymond E. Morrison applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by the Dana Madsen Law Office, Maureen J. Rosette, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On January 3, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 21).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on January 21, 2005. (T at 330-34, 496-501).[1]  Plaintiff alleged disability beginning July 17, 2001, but the relevant alleged onset date has been determined to be September 12, 2003.[2] The applications

---

[1] Citations to ("T") refer to the administrative record at Docket No. 12.

[2] Plaintiff filed an application for benefits in October of 2001.  An unfavorable decision was rendered by ALJ R.J. Payne on September 12, 2003.  Plaintiff requested review, but on February 18, 2005, the Appeals Council dismissed the request as untimely, making ALJ Payne's September 12, 2003 decision the Commissioner's final decision.  Plaintiff did not seek judicial review of this decision and concedes that September 12, 2003 is the relevant onset date with respect to the instant action. (T at 609-10).

DECISION AND ORDER – MORRISON v COLVIN 12-CV-578-VEB

were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On May 16, 2007, a hearing was held before ALJ Richard A. Say. (T at 555).  Plaintiff appeared with his attorney and testified. (T at 566-76). The ALJ also received testimony from Deborah Lapoint, a vocational expert (T at 576-83), and Dr. Ronald M. Klein, a medical expert. (T at 558-66).

On August 13, 2007, ALJ Say issued a written decision denying the applications and finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (T at 18-37).   The Social Security Appeals Council denied Plaintiff's request for review on January 17, 2008.  (T at 10-12).  Plaintiff timely filed an action seeking judicial review in the United States District Court for the Eastern District of Washington.   On October 14, 2008, the Honorable James P. Hutton, United States Magistrate Judge, remanded the case for further administrative proceedings. (T at 666-78).

On remand, a second administrative hearing was held on May 27, 2009, before ALJ Robert S. Chester. (T at 851).  Plaintiff again appeared with his attorney and testified. (T at 866-77).   ALJ Chester also received testimony from Dr. R. Thomas McKnight, a medical expert (T at 858-66), and Thomas Moreland, a vocational expert. (T at 877-82).   ALJ Chester issued a decision denying the applications on June 29, 2009. (T at 643-64).  On February 20, 2010, the Appeals

Council granted Plaintiff's request for review and remanded the matter for further proceedings. (T at 741-44).

A third administrative hearing was held on June 17, 2010, before ALJ James W. Sherry. (T at 844-919). Plaintiff again appeared with an attorney and testified. (T at 901-907). ALJ Sherry received testimony from K. Diane Kramer, a vocational expert (T at 907-18), and Dr. Jay Toews, a medical expert. (T at 891-901). On July 8, 2010, ALJ Sherry issued a decision denying the applications. (T at 606-29). ALJ Sherry's decision became the Commissioner's final decision on August 24, 2012, when the Appeals Council denied review. (T at 584-87).

On October 23, 2012, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on January 7, 2013. (Docket No. 10).

Plaintiff filed a motion for summary judgment on May 6, 2013. (Docket No. 17). The Commissioner moved for summary judgment on June 17, 2013. (Docket No. 19). Plaintiff filed a reply memorandum of law on June 17, 2013. (Docket No. 20). As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 7).

DECISION AND ORDER – MORRISON v COLVIN 12-CV-578-VEB

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for calculation of benefits.

## III. DISCUSSION

**A.    Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the

decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past

work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding

of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

ALJ Sherry found that Plaintiff had not engaged in substantial gainful activity since September 13, 2003, the relevant alleged onset date, and met the insured status requirements of the Social Security Act through June 30, 2006. (T at 612). The ALJ determined that Plaintiff's hepatitis C, asthma, depressive disorder (NOS), personality disorder, polysubstance disorder, and degenerative and posttraumatic lumbar arthrosis were "severe" impairments under the Act. (Tr. 612-13).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 613-14).  The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967 (b), except that he could never climb ladders, ropes or scaffolds and was limited to occasional climbing of ramps or stairs, balancing, stooping, crouching, kneeling, or crawling. The ALJ found that Plaintiff needed to avoid concentrated exposure to irritants, fumes, odors, dusts, gases, and poor ventilated areas.   In addition, Plaintiff should avoid concentrated exposure to moving machinery and unprotected heights.  The ALJ concluded that Plaintiff was capable of simple routine

work, with some detailed tasks and superficial interaction with co-workers and the public. The ALJ found that Plaintiff would need occasional supervision and could persist in terms of attention and concentration for two-hour intervals, but should not be given fast-paced production requirements. (T at 614-27).

The ALJ found that Plaintiff could perform his past relevant work as a fast food worker. (T at 627-29). As such, he concluded that Plaintiff had not been disabled, as defined under the Act, from September 13, 2003, through July 8, 2010 (the date of the ALJ's decision) and was therefore not entitled to benefits. (Tr. 629). As noted above, ALJ Sherry's decision became the Commissioner's final decision on August 24, 2012, when the Appeals Council denied review. (T at 584-87).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff challenges the ALJ's assessment of his psychological impairments and, in particular, opinions provided by examining medical providers and a social worker.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they

can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

### 1.    Dr. Forsyth

In December of 2003, Dr. Andrew B. Forsyth, a clinical psychologist, performed an initial evaluation of Plaintiff.  Dr. Forsyth described Plaintiff as a "questionable historian" and found "strongly suggestive" evidence of "feigned symptoms of severe mental illness." (T at 401-02).  Plaintiff's performance on clinical testing demonstrated "poor effort, carelessness, and random responding." (T at 402).  Dr. Forysth diagnosed dysthymic disorder, cannabis and alcohol dependence (in full sustained remission), personality disorder, and malingering of psychosis and cognitive deficits. (T at 404).  He assessed marked severity with regard to Plaintiff's depressed mood, verbal expression of anxiety or fear, social withdrawal, and global illness. (T at 404).  Dr. Forsyth opined that Plaintiff had marked limitations with regard to several social skills and his ability to exercise judgment and make decisions. (T at 405).

Dr. Forsyth completed a second evaluation of Plaintiff in April of 2005.  He again found test results indicating a "deliberate effort to appear more severely

DECISION AND ORDER – MORRISON v COLVIN 12-CV-578-VEB

distressed and functionally disabled by psychological disturbance . . . ." (T at 425).

Dr. Forsyth concluded that Plaintiff was "marginally employable given his physical and psychiatric symptom embellishment/manufacturing, untreated [chemical dependency] issues, dysthymia, possible PTSD, and personality disorder." (T at 462). He diagnosed dysthymic disorder, adjustment disorder with mixed anxiety and depressed mood, malingering, and personality disorder. (T at 428). Dr. Forsyth assessed marked limitations with regard to Plaintiff's ability to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, and respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 429).

The ALJ afforded little weight to Dr. Forsyth's opinions. (T at 624). The ALJ found that Dr. Forsyth's assessment of significant limitations was contradicted by the psychologist's own testing results and clinical exam findings, which indicated that Plaintiff was exaggerating, malingering, and feigning psychological distress. (T at 624). This Court finds that the ALJ's assessment is not supported by substantial evidence. A discrepancy between clinical findings and a medical opinion is an appropriate reason for discounting a doctor's opinion regarding the claimant's limitations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, here, there is no discrepancy. Dr. Forsyth concluded that "[d]espite his apparent

efforts to exaggerate if not feign the severity of his psychological symptoms," Plaintiff appeared to be "genuinely impaired in terms of his psychosocial adjustment." (T at 402).   He further concluded that Plaintiff did not appear "competitively employable . . . primarily due to his characterologic maladjustment." (T at 402).  In sum, Dr. Forsyth found that Plaintiff was disabled, *notwithstanding* his efforts to exaggerate. In other words, the examining doctor accounted for the fact that Plaintiff was malingering and incorporated that fact into his limitations assessments.   There is thus no inconsistency between the clinical findings of exaggeration/malingering and the opinion concerning Plaintiff's limitations.   The ALJ's decision to discount Dr. Forsyth's opinion was not supported by a specific and legitimate reason, as required under the applicable legal standard, and therefore cannot be sustained.

### 2.    Dr. Arnold

Plaintiff was evaluated by Dr. John Arnold, a clinical psychologist, in April of 2007 at the request of Plaintiff's counsel. (T at 482).   Dr. Arnold diagnosed dysthymic disorder, pain disorder with both psychological and medical factors, anxiety disorder NOS, and dependent personality disorder (with depressive, paranoid, and avoidant features). (T at 486). Dr. Arnold described Plaintiff's prognosis as "guarded to poor" and assigned a Global Assessment of Functioning

DECISION AND ORDER – MORRISON v COLVIN 12-CV-578-VEB

("GAF") score[3] of 58 (T at 486), which is indicative of moderate symptoms or difficulty in social, occupational or education functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at *19 n.2 (E.D.Wa Jan. 7, 2013).

Dr. Arnold assessed marked limitations with regard to Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (T at 488). He also found marked limitations as to Plaintiff's ability to work in coordination with or proximity to others without being distracted by them and with respect to Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T at 488). Dr. Arnold opined that Plaintiff would have marked limitations with respect to accepting instructions and responding appropriately to criticism from supervisors. (T at 488).

The ALJ gave little weight to Dr. Arnold's opinion, noting that Plaintiff was referred to Dr. Arnold by his attorney. (T at 625). However, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). Although the

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – MORRISON v COLVIN 12-CV-578-VEB

precedential value of *Lester* has been questioned, *see Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1995), the Ninth Circuit has held that the fact that a physician's opinion was requested by claimant's counsel is not a legitimate basis for rejecting the opinion "in the absence of other evidence to undermine the credibility" of the report. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  Here, the other evidence cited by the ALJ does not tend to undermine the credibility of Dr. Arnold's report.

The ALJ noted that Dr. Arnold's GAF score of 58 was indicative of only moderate symptoms. (T at 625).  However, a medical source's "narrative discussion is more probative than a GAF score in ascertaining plaintiff's functional capacity." *See Golloian v. Astrue*, No. CV-09-3114, 2011 U.S. Dist. LEXIS 12345, at *32 (E.D.Wa. Feb. 8, 2011).  Here, Dr. Arnold found "a significant amount of paranoia, or at least marked mistrust of others." (T at 485).  He noted that Plaintiff had difficulty "modulating his negative mood . . . such as anger and frustration." (T at 485).  In addition, Dr. Arnold's assessment was consistent with Dr. Forsyth's opinion, which provides an additional reason for crediting the assessment.  As such, this Court finds that the ALJ's decision to discount Dr. Arnold's opinion was not supported by specific and legitimate reasons, as required under the applicable legal standard.

### 3.        Other Medical Evidence

Dr. Thomas McKnight testified as a medical expert for the Commissioner at the administrative hearing held on May 27, 2009.  He opined that Plaintiff had a personality disorder with a multitude of features. (T at 862-63).   Although Dr. McKnight's testimony is at times difficult to follow, he generally assessed moderate difficulties in social functioning and in maintaining concentration, persistence, or pace. (T at 863).  He opined that Plaintiff would have moderate limitations with regard to interacting appropriately with the general public, accepting instructions, responding appropriately to criticism from supervisors, and completing a normal workday and workweek without interruptions from psychologically based symptoms. (T at 864).

Dr. Jay Toews testified at the administrative hearing held on June 17, 2010. Dr. Toews was asked about Dr. McKnight's opinion and testified that "overall" he "agree[d] with Dr. McKnight's assessments." (T at 894).  Dr. Toews clarified that Dr. McKnight's assessments were somewhat more restrictive than his, with Dr. Toews assessing "variable" limitations with regard to concentration and pace. (T at 894).   When asked about Dr. Arnold's assessment, Dr. Toews opined that the opinion was internally consistent, but was too restrictive and not "reflective of the longitudinal history . . . ." (T at 896).  Dr. Toews described Dr. Forsyth's opinion as

DECISION AND ORDER – MORRISON v COLVIN 12-CV-578-VEB

the "most thorough assessment . . . ." (T at 897).  However, Dr. Toews concluded that Plaintiff could perform simple, routine, and some detailed tasks and could sustain attention for two to three hours at a time. (T at 899-900).  He also opined that Plaintiff could perform "routine, repetitive types of work." (T at 900).

The ALJ gave "little weight" to Dr. McKnight's assessment and concluded that Dr. Toews's opinion was "more consistent with the record as a whole." (T at 624-25).  However, this conclusion was impacted by the ALJ's errors in assessing the opinions of Dr. Forsyth and Dr. Arnold, whose assessments tended to contradict Dr. Toews's less restrictive findings.  In addition, the ALJ gave "significant weight" to the opinion of Dr. Renee Thompson, a consultative examiner who assessed generally mild limitations (T at 625, 799-807), without discussing the fact that Dr. McKnight was critical of her methodology and conclusions. (T at 861-62).  The ALJ gave "little weight" to two evaluations completed by Annabelle Payne, a social worker, in August of 2009 (T at 811-18) and September of 2010 (T at 594-603), which assessed marked limitations as to social functioning and moderate limitation with regard to responding appropriately to and tolerating the pressures and expectations of a normal work setting. (T at 626).

The ALJ thus relied heavily on the opinions of Dr. Thompson (who examined Plaintiff once) and Dr. Toews (who never examined Plaintiff).  However, Dr. Toews

DECISION AND ORDER – MORRISON v COLVIN 12-CV-578-VEB

himself opined that Plaintiff's presentation "would vary over time and from one person to another" and, as such, any single evaluation "would not be, overall, . . . a reflection of the sustained status of the individual." (T at 896).  Dr. Toews thus counseled against the very conclusions that the ALJ drew from a single examination (by Dr. Thompson) and from a non-examining source (Dr. Toews).  In contrast, Dr. Forsyth and Ms. Payne both examined Plaintiff on more than one occasion at different times.  In addition, during both of his exams, Dr. Forysth performed an array of testing that Dr. Toews described as "most thorough assessment . . . ." (T at 897).

### 4.    Remand

Under the Ninth Circuit's "credit as true" doctrine, evidence will be credited and the case will be remanded for calculation of benefits where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)(quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

The purpose of this doctrine "is to discourage ALJs from reaching a conclusion about a claimant's status first, and then attempting to justify it by

ignoring any evidence in the record that suggests an opposite result." *Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009). Further, if the Commissioner has appropriate reasons for rejecting evidence, "it is both reasonable and desirable to require the ALJ to articulate them in the original decision." *Harman*, 211 F.3d at 1179 (quoting *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The "credit as true" doctrine is "not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision." *Mustonen v. Colvin*, No. CV-12-3127, 2013 U.S. Dist. LEXIS 168343, at *26 (E.D.Wa. Nov. 26, 2013).

In this case, as discussed above, Dr. Forsyth, Dr. Arnold, and Ms. Payne all assessed disabling psychological limitations. The ALJ's decision to discount these opinions was not supported by substantial evidence; there are no outstanding issues that must be resolved before a determination of disability can be made; and it is clear from the record that the ALJ would be required to find Plaintiff disabled if, in particular, the psychologists' opinions were credited. The standard for the "credit as true" doctrine has thus been met.

In *Vasquez*, the Ninth Circuit exercised its discretion and applied the "credit as true" doctrine because of Claimant's advanced age and "severe delay" of seven years in her application. *Vasquez*, 572 F.3d at 593-94.  Here, the delay of more than nine (9) years from the date of the applications make it appropriate and just for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

## IV. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No.  17**, is **GRANTED.**

The Commissioner's motion for summary judgment, **Docket No. 19**, is **DENIED**.

This case is remanded to the Commissioner for calculation of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff, and hold the case open for a period of thirty (30) days to allow Plaintiff's counsel to file an application for attorneys' fees.

DATED this 28th day of May, 2014.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – MORRISON v COLVIN 12-CV-578-VEB